UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JERMAINE A. DRAKE,                    )
                                      )
                    Petitioner,       )
                                      )        CAUSE NO. 3:14-CV-1691 RM
          vs.                         )
                                      )
SUPERINTENDENT,                       )
                                      )
                    Respondent.       )

OPINION AND ORDER

Jermaine A. Drake, a *pro se* prisoner, filed a habeas petition under 28 U.S.C. § 2254

challenging a state conviction and 55-year sentence for murder in Delaware Circuit Court

under cause number 18C02-0410-FA-06. (DE 1 at 1.) On direct appeal, the Indiana Court

of Appeals set forth the following facts, which are presumed correct under 28 U.S.C.

section 2254(e)(1):

> Approximately one week before October 2, 2004, Drake informed two
> of his friends - Jordan Williams and Jordan Quinn - that his in-car television
> had been stolen. Drake instructed the men to contact him if they learned the
> whereabouts of the television.
>
> On October 2, 2004, David Adams contacted Chris Masiongale in
> Yorktown and informed him that he had a television to sell. Adams told
> Masiongale that he could keep any money over $150 if Masiongale could sell
> the television. Masiongale agreed and called Quinn later that day regarding
> the television. Quinn subsequently called Drake and informed him that
> Masiongale had contacted him about a television. After speaking with Drake,
> Quinn called Masiongale and arranged a meeting between Masiongale and
> Drake.
>
> After determining that Quinn would not be able to drive Drake to the
> meeting, Drake called Williams and informed him that "he knew who stole

his tv and asked [] if [Williams] would go with him to get it." Because Williams was at Ronnie Haste's home when he received the call, he and Haste both went to Drake's apartment to pick him up. Williams drove his black Dodge Ram to the apartment because Haste was too intoxicated to drive. After picking up Drake, the three men drove to the arranged meeting place.

Masiongale, Adams, Kirt Trahan, and Masiongale's girlfriend, Lyndsey Scott, were outside Adams's home when a black Dodge Ram carrying three people arrived. Williams stepped out of the vehicle and asked to see the television. Drake also exited the vehicle, approached Masiongale and said, "Give me my shit." Before Masiongale could answer, Drake shot him. Williams grabbed the television and said, "I got it come on," and the men got back into the vehicle and drove away. While fleeing from the scene, Drake called his mother and "asked for two (2) tickets to California because he thought he just killed somebody." Masiongale was taken to Ball Hospital, where he was pronounced brain dead the next morning and died after being removed from life support.

During the next few days, Williams, Scott and Adams selected Drake's picture from a photo array. On October 10, 2004, Drake, who had fled to California, contacted Carlos Kelly, a pastor in San Diego. Two days later, Kelly helped Drake turn himself in to the local law enforcement authorities.

On October 6, 2004, the State charged Drake with murder. A four-day jury trial began on February 27, 2006, and the jury ultimately found Drake guilty as charged. The trial court held a sentencing hearing on March 30, 2006, and sentenced Drake to fifty-five years imprisonment.

(DE 6-5, pp. 2-4.)

Mr. Drake raised three arguments on direct appeal: there was insufficient evidence to identify him as the shooter, Mr. Kelly's testimony was improperly admitted due to privilege, and Mr. Williams shouldn't have been allowed to testify. The Indiana Court of Appeals affirmed Mr. Drake's conviction and sentence. (Id.) The Supreme Court of Indiana

denied his petition to transfer on June 26, 2007. (DE 6-1.) Mr. Drake didn't seek review in the U.S. Supreme Court. (DE 1, p. 1.) Mr. Drake filed for post-conviction relief on September 23, 2008. (DE 6-2, p. 25.) His post-conviction proceedings are before the trial court. (DE 6-1.)

Mr. Drake filed his federal petition on June 30, 2014. (DE 1.) He raises two claims. First, he alleges his trial counsel was constitutionally deficient and ineffective. Second, he alleges he was denied a fair trial based on prosecutorial misconduct. Along with his petition, he filed a motion for a stay and abeyance. (DE 3.) He acknowledged that he hasn't yet exhausted state court remedies and that he has a post-conviction petition pending in the state trial court. He seeks a stay so that he won't forfeit his right to seek federal habeas relief after the state proceedings have concluded. This court denied that motion with leave to refile if the respondent argued lack of exhaustion in response to the petition. (DE 4.)

The respondent did argue this case should be dismissed for lack of exhaustion, prompting Mr. Drake to again file a motion for stay and abeyance. (DE 8.) The respondent argues that a stay isn't warranted in this case. (DE 6.)

Before considering the merits of a habeas petition, a court must ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); Lewis v. Sternes, 390 F.3d 1019, 1025 (7th Cir. 2004).

> Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in the federal habeas proceeding does it make sense to speak of

the exhaustion of state remedies. Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings.

Lewis v. Sternes, 390 F.3d at 1025-26 (internal citations and quote marks omitted).

It is undisputed that Mr. Drake hasn't exhausted his state court remedies. Until he does so, he can't get federal habeas relief. Id. at 1026. The court has discretion to stay a petition containing unexhausted claims when the petitioner would be time-barred if he were to return to federal court, such that a dismissal "would effectively end any chance at federal habeas review." Dolis v. Chambers, 454 F.3d 721, 725 (7th Cir. 2006); see also Rhines v. Weber, 544 U.S. 269 (2005).

Mr. Drake would likely be time-barred were he to return to federal court at a later date. The Indiana Supreme Court denied Mr. Drake's petition to transfer on June 26, 2007, and his conviction became final when the time for seeking review in the U.S. Supreme Court expired on September 24, 2007. See Martinez v. Jones, 556 F.3d 637, 638 (7th Cir. 2009.) Mr. Drake had one year from that date to file a federal petition, or have a properly filed petition for post-conviction relief that served to toll the statute of limitations period. 28 U.S.C. § 2244(d). Mr. Drake filed his petition for post-conviction relief on September 23, 2008, one day before the expiration of the statute of limitations. Mr. Drake would have only one day left on the clock if he were to return to federal court after his state post conviction proceedings conclude, which weighs in favor of staying rather than dismissing the petition.

The court must next consider whether there was "good cause for the petitioner's failure to exhaust his claims first in state court." Rhines v. Weber, 544 U.S. at 277. The

respondent argues that Mr. Drake hasn't demonstrated good cause. Mr. Drake explains that he "was confused about whether his filing of a State post-conviction petition would be timely and because of unexhausted claims." (DE 8.) This is the sort of confusion that usually constitutes "good cause." Pace v. Diuguglielmo, 544 U.S. 406, 416-417 (2005) (citing Rhines v. Weber, 544 U.S. at 278)). And since Mr. Drake only has one day left to file his habeas petition, he had good cause to file it before exhausting his state court remedies.

The remaining inquiry is whether Mr. Drake's claims have some possible merit. *See* Rhines v. Weber, 544 U.S. at 277-278. This is a low standard, and a stay is the "preferred course of action" as long as the claims aren't "plainly meritless" Tucker v. Kingston, 538 F.3d 732, 735 (7th Cir. 2008). Mr. Drake claims his trial counsel was ineffective assistance of trial counsel. The respondent acknowledges the merits of this claim can't be gauged at this point, (DE 6, p. 7.) so this petition can't be dismissed as meritless.[1]

Because Mr. Drake's claims have some potential merit, the "preferred course" is to stay the petition. See Tucker v. Kingston, 538 F.3d at 735. Accordingly, the court will stay the petition until the state proceedings are concluded. In the meantime, because it's unknown how long Mr. Drake's state post conviction proceedings will last, the case will be statistically closed. Mr. Drake must exhaust his claims in one complete round of state review, including with the Indiana Supreme Court, before he can return to federal court.

---

[1] Mr. Drake's habeas petition also includes a claim that the prosecutor violated his due process rights to a fair trial. The respondent argues that this claim is plainly meritless and it is procedurally defaulted because Mr. Drake didn't raise it on direct appeal. The court doesn't have the full trial record or any documents filed in the post-conviction proceeding, and it isn't clear that Mr. Drake isn't pursuing or couldn't pursue a due process claim on post-conviction review. And Mr. Drake alleges the claim wasn't raised due to appellate counsel's ineffectiveness. The state's procedural default argument is premature at this stage.

Lewis v. Sternes, 390 F.3d at 1025-1026. When the state proceedings are over, he should notify the court within 30 days that he is prepared to proceed by filing a notice indicating that his claims have now been exhausted.

For the foregoing reasons, the court:

    (1) GRANTS the motion to stay (DE 8);

    (2) STAYS the case (DE 1);

    (3) ORDERS the petition to file a notice within 30 days of the conclusion of the state court proceedings that he is ready to proceed on his current petition (DE 1); and

    (4) DIRECTS the clerk to statistically close this case.

SO ORDERED.

ENTERED: January 15 , 2015.

                          /s/ Robert L. Miller, Jr.
                        Judge
                        United States District Court